May it please the Court, my name is Greg Rosenberg, and I have the privilege today of representing Corey Waldron. Your Honors, this is a case about an individual, Mr. Waldron, who certainly had a cause of action, a cause of action engaging in a protected activity that's covered throughout the ADA and all the other types of anti-discrimination statutes. He protested an illegal job practice. That was that it was a chicken wing restaurant, as the Court is familiar with, the applicants or there was one applicant in particular who was a 72-year-old male who wanted to work, as they say, in the front of the house greeting guests and things of that nature. His allegations or he contends that he was told not to hire someone like that wasn't what the business wanted. He protested it, and he was terminated. He was relieved of his general manager position. The case took on an interesting, actually, set of facts that I hadn't seen before in that the EEOC came in as a result of the charge of discrimination that Waldron filed, I don't want to leave that out. EEOC goes in and investigates the company, not only on Waldron's behalf, but on behalf of the several, the high number of applicants who were not given jobs because of their age, and the EEOC did a directed charge, filed its own lawsuit, as does happen from time to time. So once that lawsuit was filed, Waldron's charge was still at the EEOC. So his charges sit in their EEOC, we're trying to get a right to sue, we finally do obtain the right to sue from the EEOC, and within the requisite time period, once the right to sue was received, within a requisite time period, we filed a motion to join the lawsuit that was already before the trial court. Did you file a complaint with the motion to join? No, there was a motion, it was a motion to join, but we, and the record is pretty clear, we set forth our claims and cause of action, we set forth our claim, and the relief we were entitled to under the anti-retaliatory provisions of the Age Act. But you didn't file a complaint? Not, no, not any complaint. You didn't serve a complaint, obviously. You didn't serve a complaint? No, no. So what is your view of the distinction between Rule 20 Joinder, I'm sorry, of Rule 20 Joinder and Rule 24 Intervention? Okay, so Rule 24 Intervention, so that, I mean, you know, this came later, and the Rule 24, I just want to make sure I have it correctly for the court. Rule 24, actually, Rule 24 gives you the right to, if you have a justiciable interest in the controversy before the court, or a claim for relief before the court, you have a right to intervene into that case. Rule 20, you didn't ask me about Rule 20, so I'm not going to. Well, as I understand it, the only thing that your client did prior to the end of the 90th day, which would have been the jurisdictional limit on your right to sue letter, was to try to join. Correct. So, outsiders to a lawsuit, right, Mr. Waldron would have been an outsider to the lawsuit between EEOC and J.C. Wings. Correct. How did they join the lawsuit under Rule 20? Under Rule 20? Well, it's the same, he files a motion to join it because it's the same transaction, at least one common question of law fact, which is there, because of the, in order to join, there has to be, the requisite fact, there has to be a common question of law fact. So the, we've, I've already described. Maybe I should ask it this way. I've read each of the cases in your brief on Rule 20 that involve joinder. And all of those cases involve one of two things. It's either two part, the parties to the lawsuit try to join an outsider, or the court, because it's necessary and indispensable, can join an outsider. But if the outsider wants to join the lawsuit, they do that under Rule 24, not Rule 20. I understand that. We don't believe, because it came out, the mandatory prerequisite for the EEOC to get into the case in the first place is the charge that Waldron filed. So it's a little bit different than a situation that you may, you may be describing, because I don't think you're taking into consideration that in order for the controversy to get before the court, there has to be an EEOC charge filed. We're the ones that did that. So we, I don't, I'm not going to concede that we're an outsider. I believe we're the catalyst to, Waldron is the catalyst to this whole litigation. It doesn't happen. Okay, counsel, I think the question, and I may be wrong, and this is the question I have, is do you have a technical problem regarding the 90 days in this case? Because does your motion to join, does that count to satisfy your right to sue? So I do believe it does satisfy, and I think one of the concepts that we'd be looking at would be the concept of equitable tolling. Because we, the same basis of the EEOC charge, we gave fair notice to the appellee. We alleged that it was the same, you know, nucleus of operative facts and all the things required. They knew who the witnesses are. They knew what the claim was. So there's no, to address your question directly, Judge Elrod, I believe that that, because you're asking me on the 90th day, it clearly gives them fair notice. So you had your joined or motion filed by the 90th day? Yeah. Yes, ma'am. And so you believe that's a placeholder for a complaint? Absolutely. And do you have any authority whatsoever that a motion to join is a placeholder for a complaint? There isn't. There isn't. If there was authority, I can assure you it would have been in our brief. Yes, sir. I understand. You know, Your Honor, this is a very unusual occurrence, and I'm not, I'm just telling you, arguing the facts. These types of things happen all the time. The EEOC will do what's called a directed charge, file the suit, and the aggrieved person will always intervene or join, either one. What's different in this case, what's different is that the EEOC initiated the litigation on Waldron's charge on behalf of other people. I'm not standing before this court saying it's never happened before, but I am standing before the court saying in my 32 years I've not seen it. Doesn't mean it didn't happen. It's unusual, and there's very little case law, if any, on a situation where the same situation occurred. The next question that I have has to do with your joinder argument, that there was error in the ruling on that, as opposed to intervene, to separate joinder and intervention. Joinder, do we have jurisdiction at this point to consider the joinder argument, or do we need to wait until there is a final judgment in the underlying case, and then you appeal from that, that you were denied the right to join? So that's my next question. Do you have any thoughts on that? The underlying case is resolved. So, but is it, is there a final judgment such that you could, that you're timely, and then that we would have jurisdiction over that? Well, I want to make sure I'm understanding. Every aspect of it is resolved. Right. I want to make sure I'm understanding your question. The final judgment, the disposition of the case, was your standard affirmation of a settlement, because we're not in it. They resolve their differences, case is done. So there is a final order in the court's record. I'm sure we provide, I know we provided it. Well, it's done in the sense there was a consent decree. Are you saying the consent decree has expired? My understanding was there was an EOC JC Wing's consent decree. On October 2nd, 2018, there was a consent decree. Right. And there's no appeal from the consent decree. Correct. So my question is, how do we have jurisdiction to rule on the joinder issue, as opposed to the interpleader issue? I mean, I'm sorry, the intervention issue. My understanding was that after the consent decree was issued, a final judgment dismissing the case was entered. Well, do we have that? It's in the record. I can't believe it wouldn't be. I can. So you believe there is a separate final judgment? The case was, we wouldn't have appealed from anything that wasn't a final judgment. Okay. Well, we'll have to double check the record on that, I think. And maybe your opposing counsel would also have something on that. But you believe that you, do you agree, though, that you can't appeal a joinder until there is a final judgment? Yes. Okay. Yes. But that's not a hindrance for your intervention appeal, is it? No, I don't believe it is. You know, I think the best way to argue and illustrate the problem that we have in this case, is that we have a situation where, as I said, the same transaction. And there's no, I don't, I'm at a loss, as you can tell right now, for why there was no guidance, no opinion. It was just a straight, you know, plain dismissal or denial of our order to come into the case. Did you move to intervene only in that part of the motion for reconsideration? Did you file any separate motions? No, no doubt. I mean, the court did note it, though, because he put it in the order. He mentioned intervention. Right. So he's not, he didn't just overlook it. I don't, I'm not saying. No, I'm just trying to figure out. I don't, we don't have any reasons why the court denied the motion for intervention. There's no, there's no reasons given. And to, as we see it, to deny a, he was either aggrieved or he wasn't. That's, there's an issue of fact as to whether or not he was retaliated against. But to deny Mr. Waldron the opportunity to at least have his case adjudicated, is a horribly prejudicial effect on him. Well, it makes some sense to deny it if it was time barred, right? Because by the time the intervention motion was filed, the 90 days had run by over a year. Right. So let me. So I just want to make sure I understand the authorities that we're relying on. So we don't have any cases that say rule 20 motions to join, satisfy the 90 day clock that would apply to the EEOC right to sue letter. One way or another. Right. So do we have any cases that say you can file rule 24 intervention motion after the 90 days have run? I'm sure there are. Oh, after the rule 24 intervention, after the 90 days? Yeah. Without tolling, I haven't seen any cases. Okay. So you believe you need the tolling to get you over the 90 day hump? Yes. Okay. Yeah. And you know, look, the question I was anticipating from the court, and I've appeared before you times before, is why didn't we just file our own lawsuit? I've been wanting to ask that the whole time. I've practiced before you before, I understand, and I'm not, and I'm going to tell you. We're free to answer, so go ahead, answer it. I'm going to tell you the reason. Judicial economy. It didn't make sense, because if we, well, I saw the cringe, but I'll tell you why, Your Honor. All right? When we would have filed our lawsuit, let's say we would have filed a separate lawsuit when we, at the time of the intervention or any time before. What would have happened is it would have gone back, because you, in the civil cover sheet, they ask you for related cases and things like that. It would have gotten back there anyway. And rightfully or wrongfully, rightfully or wrongfully. Would have gotten back where? To the court where we're trying to get into. It would have been in Judge Bennett's case. Yes, because I think we're, where I'm coming from is it would have ended up, if we would have filed a separate case, it would have ended back in Judge Bennett's court, in the same one, and we were just trying to move it along. We thought that would be the best and most efficient, only because we believed and still do believe we had the right to do so. It was procedurally correct and factually correct. So that's why you didn't file your own lawsuit. Why didn't you file a Rule 24 intervention motion along with a complaint served under Rule 24C before the 90th day? Your Honor, that was a choice we made. Looking back, certainly, if I knew it would have been here, I might have revisited it. I'll be very candid with the court. We thought that the joinder was the way to go because it put all the parties on notice. This was no surprise. They've been dealing with the EEOC charge forever. It was a very long charge. There was no surprise and we were just trying to get the case adjudicated. We thought then and still think now, even after this argument, that that was the appropriate measures to take because it put them on, they had fair notice. There was nothing coming from the side. It was all straight down the middle. Okay. Anything else you want to tell us? No, I'll reserve. I have some time left. Thank you very much. We appreciate your argument. You've saved time for everybody. Counsel, you may proceed. Good morning, Your Honors. May it please the court. My name is Monica Orlando and I represent all the named defendants, J.C. Wings Enterprises, at all. It is our position today that we believe that the trial court did not abuse its discretion with respect to the joinder, the intervention, as well as the equitable tolling. Well, you know, the intervention is not reviewed for abuse of discretion. It's reviewed de novo. Correct. As to the issue of permissive as of right versus, excuse me, as of right versus permissive joinder, I do agree with that, Your Honor. We do not believe that the trial court erred and we believe that the trial court opinion should be affirmed. What is different about this case that opposing counsel did not address with the court is that it is our position as to the joinder claim that he did not meet the elements with respect to the two-prong test. This claim did not arise out of the same transaction or series of transactions. The reason being was that Mr. Waldron was a manager. He was already employed by the defendant and he was not denied employment like the people the EEOC was seeking to protect with respect to its lawsuit. And he has a retaliation claim versus a claim of not hiring people over the age of 40. But these retaliation claims are often put together. The person who's reported or in allegiance with discriminated employees, those cases are often together and that's not unusual at all. The person who's in solidarity is the right word I'm trying to think of and says, you can't treat my co-worker unfairly and I'm going to go to the mat with my co-worker. That person has, and they get fired? That is with, that lawsuit is treated in the same lawsuit most of the time. There are certain circumstances where that is true, Your Honor, but in this particular case, an opposing counsel argued this to the court. He keeps talking about the same charge, same claims. These were two different charges. Mr. Waldron had his own separate charge. He got his own right to sue letter with respect to his own charge. He could have gone and filed his own separate complaint with respect to that. The EEOC had its own separate charge. But he did it as a result of him making them aware of the issue, right? That's the allegation that Mr. Waldron is making. And you have nothing to the contrary, right? I don't have anything to the contrary, but there's nothing in the record that indicates that's the reason why the EEOC brought the claim that they brought against the defendant in this case. But his claim is that he was retaliated against for failing to carry out their discriminatory policy. That's the allegation that they're making. However, we have a legitimate, nondiscriminatory reason. And the lawsuit that he sought to join has to do with protecting a class of people who wouldn't be hired because they're in this certain category, a class of people, age. That is correct. But, Your Honor, his damages are different. His causes of action are different. The witnesses are different. Because we have a right to put on the reason for his termination and the reason why. But in order for him to prevail in his claim, there has to be, he has to prove that there is this discriminatory policy. Correct. And in order for the EEOC to prevail in its case, they have to prove that there is a discriminatory policy. They have to do more than that. They have to show a pattern or practice of this particular policy among all the restaurants that they sued. So they have to do more. They have to do a lot more, Your Honor. All right, but he has to, but they have to at least prove exactly what he needs to prove in order to prevail with regard to discriminatory policy. That is true. They've got to at least do that. They've got to at least do that. And if they fail on that claim, he loses his claim, doesn't he? That is true. All right. That is true. So he needs to be there to protect his right. I disagree with that, Your Honor, because he could have had his right protected had they filed the complaint in a separate lawsuit, Your Honor. No, because then they could use, if they are unsuccessful and they're going ahead of him, then you could pile on and say, there's not even a discriminatory policy because we've already had that whole lawsuit with the EEOC, and we were found not to have engaged in that. You could prejudice, and for intervention the term is practically prejudice, not legally prejudice. You could make it more difficult for him to win his case by what happens in your case if he is not there to protect his right. I respectfully disagree, Your Honor. Why do you disagree with that? I disagree because it's not going to bar his claims as a matter of law. That's not the test. It's a practical matter. Well, I don't see it that way, unfortunately. What do you mean you don't see it? That's the actual written down test. Texas v. U.S. lists the four elements of the intervention, and that's element number three. But counsel didn't intervene until almost a year after his motion to join, Your Honor. Okay, so you're talking about joinder, not intervention. Correct. Counsel, are you aware of any cases where filing a joinder motion without a complaint, that is, so we're not talking about intervention now, just talking about joinder. Have you ever seen a case where a plaintiff has tried to join without a complaint and satisfied the 90-day clock? I have not seen any cases, Your Honor. I did search for them, but I did not find any. And have you ever found a case where a post-90-day Rule 24 intervention motion was held to satisfy the 90-day clock for EEOC claim? I have not found any cases. Counsel, do you complain in your brief at all that the case should be dismissed because, that his appeal should be, that he should lose his appeal because he did not file his joinder properly or did not file a complaint? Is that anywhere in this red brief? No, Your Honor, it's not. But the issue that I have made in this court is the issue that he did not timely sue the right defendant. And that's important in this case because the employer that Mr. Waldron had was CK1 Enterprises. When he filed this request to join the case within that 90-day period, he sued the wrong defendant because CK1 Enterprises was not a defendant in this underlying case. So you're spotting him that that was suing. You're just saying it's the wrong person. Correct. Okay. Correct. And he was well aware, the counsel was well aware of the fact that CK1 was not a party and was well aware of the fact that that was not the employer. He did nothing, even after it was raised on our response to the joinder, even after it was raised, he did nothing to file an intervention at that point. He waited until the court ruled on the joinder before filing any intervention. Is CK subject to the judgment of the court? Yes, there was a consent decree that was entered. And it's my understanding, based on that consent decree, that that's a final order, even though there are certain requirements that have to be met by our client that the court retains jurisdiction to enforce. Okay. So you believe that there is a final order and that the appeal of the joinder is ripe? That's correct, Your Honor. Okay. And how is CK subject to the consent decree if they're not a defendant in this suit? Well, they were added after the statute of limitations ran by the EEOC. When were they added? On June 22nd of 17, and according to the record, if we take as true Mr. Waldron's statement in the record that he didn't receive notice of his right to sue until March 4th, June 2nd would have been his statute of limitations, and it would run. So even if this court were to reverse and remand, we would still have an argument before the court, whether it be a 12B6 or motion for summary judgment, that he missed his deadline anyway. Right, but you all could tee that up, right? I'm sorry? You all could tee that up. You could argue that, because you haven't actually argued that here. That's correct. We could do it, but we're going back and we'd be re-arguing almost the same points that I've tried to make as part of this particular record. But are not part of your brief. The issue of statute of limitations, yes, it was part of my brief. But you're not talking about the 90 days at all. You're talking about the statute of limitations for suing the wrong defendant. He should be barred as a matter of law for suing the wrong defendant. This is more than a defect situation. Okay. Just so I'm following, you're saying the wrong defendant was CK1? CK1 Enterprises was his employer. CK1 Enterprises was not a defendant at the time he filed his motion to join. But now they are a defendant. They were added as a defendant after the statute of limitations ran. But why can't he then be in the intervention? Because the intervention, you don't have to be timely for that. Well, I agree with the issue. If it relates back. I agree as to the statute of limitation, but I don't think he's met his elements with respect to the intervention. Well, it seems like four requirements. Okay, let's go through that because it seems to me that he may have. And so you agree that the statute of limitations doesn't bar the intervention. It would relate back. That is correct. But I do not believe, as a matter of law, he's met his right to intervene. There's four factors, as this Court is very well aware. First of all, there has to be timeliness. He waited until after the ruling on the joinder before filing an intervention. He could have filed the intervention at the very beginning. He could have filed the intervention during the course of the proceedings. He waited until almost 45 days before the end of the discovery period to file an intervention request, only because the joinder request was denied. What do we do about the NRA antitrust litigation case where they waited more than two years and the State of Texas was well aware of it, still didn't get involved until much later? Well, Your Honor, with respect to that case, I believe that in our situation we had already been before the Court. We had been dealing with the EEOC situation for almost five years. We were ready for trial in September. If the Court would have granted the intervention at that late date, it would have severely prejudiced my client because we didn't even do any discovery at all with respect to Mr. Waldron's claims. He wasn't even engaged in the lawsuit at all. We had witnesses, different witnesses, with respect to our legitimate reason why we terminated him for sexually harassing another employee. None of that had been developed. He didn't participate in disclosures. He hadn't participated in any of the depositions. We would have been unduly prejudiced because the trial would have had to have been delayed. We would have had to extend discovery deadlines, Your Honor. Counsel, is there any authority that you can cite that says the mere extension of discovery deadlines or delay of trial is enough to show the untimeliness in this? Because this is supposed to be liberally construed in favor of the intervention, and they have cases that have just been years later that they allow people to intervene. There is not a case law with the specific facts that we have before this Court. There are cases that talk about time periods being, you know, if it's eight months, it may be too long, or if it's a year, it's too long, or what have you. The bottom line in this case, Your Honor, counsel could have done something. Mr. Waldron could have done something to file an intervention much more quickly than what he did in this case. Right, but that's not the test. So can you go through the other elements, please? Yes, Your Honor. Other than timeliness, the Court has to consider that Mr. Waldron had an interest in relating to the property, and he had to be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest, and that he was inadequately represented by existing parties to the suit. If you will look at the joinder pleadings that were filed by Mr. Waldron, he admits in his pleadings that the EEOC adequately was protecting his interest. Then once the joinder was denied, he switched gears and said, oh, well, I'm not adequately protected by the EEOC with respect to my claim. What is the problem with that? Why can't you change your mind? Didn't the MALDEF change its mind in the Texas v. U.S. case about whether the State could adequately represent it because the State was getting into all sorts of issues related to discovery and other things? Well, Your Honor, I mean, I don't see how he can change ship right in the middle of the case because he knew what the EEOC was trying to do. The EEOC was trying to say that we were discriminating, hiring people in front-of-the-house positions, and they were trying to enjoin us from doing that. There was no way he could have argued early on that the EEOC was trying to protect his interest. There was different claims, different damages, different theories of recovery, Your Honor. So I don't see how he can just jump ship in the middle of the case and go that route. Okay. Did you want to address the second factor that you read? The applicant must have an interest relating to the property or transaction. I disagree that he had any interest in the particular claim. He wasn't a part of the protected group. He wasn't a party that was not hired for a front-of-house position. He was already an employee of the defendant, albeit only two months. He had been working at the restaurant. So he doesn't fit that protected class. If he doesn't fit that protected class, how does he have an interest related to the EEOC's claims with respect to the pending lawsuit? So, therefore, I don't think he even met element number two. And the issue as to the third element that he's so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest. Same thing, Your Honor. There's case law that says that he would be needed in that case if he were to be able to, if he were not able to recover from the elements of damage from the EEOC. He has not proven his case on that issue. So I just, I disagree that he's met element two. I disagree that he's met element three. And I disagree that the motion was timely. He could have done something much earlier, Your Honor. He did nothing. He just sat back and did nothing. Counsel, can I, I want to make sure I understand from the conversations we've had today, the argument, your principal argument on timeliness. If you have your brief in front of you, I'm looking at page 25. Okay. And what I understand, the last sentence of this paragraph sub 2A, this last sentence is that the motion to intervene was untimely because he did not file it before the 90th day after he received the right to sue letter. Is that the position of JC Enterprises? It's untimely because it was not filed within the first 90 days? That the complaint was not filed? Yes. Correct. Thank you. Where does it say that? Page 25. Right. But it says he could have taken steps before then. Correct. So it's not a limitations argument. It's why you don't think it's timely to satisfy element one. Right? Correct. You're not saying it's automatically barred. You're saying prong one cuts in your favor. Correct. Okay. Again, I'm not aware of any case law that's out there that deals with the specific facts relating to this particular matter in the issue of the statute of limitations. Okay. Thank you. For judicial, in addition to the arguments that have been made, Your Honor, there was never any discussion thus far dealing with the prejudice to the client. The time period that my client had to endure with respect to this case, and I believe that the underlying court denied the request because it was not good for my client to continue with its extended lengthy trial of this case. And if the court would have granted either the joinder or the intervention, I see that this case would have lasted another year to year and a half just to get past all of these issues that were raised by Mr. Waldron. And because of that, I believe the court denied both requests with respect to that issue. I do not have anything further, Your Honor, unless you all have some questions. Thank you for answering our questions today, and we appreciate your argument. Thank you. And it's your turn for rebuttal. Your Honors, if I heard correctly when Judge Elrod asked if they were spotting that we sued, to me that constitutes a judicial admission, and it resolves that. I don't know if the court sees it the same way, but that would be my position on the comments that were made. I want to address just a few things in rebuttal. I didn't bring this up in the beginning in my opening argument, but regarding the employer, the identity of the employer. If you look at our reply brief, and I'm sure you have on page 6, we cite to the court Barkins v. International Pens case that addresses this issue. Adding the correct defendant outside the limitations period allowed a relation back to the original filing. Since the party, in this case International, had represented, was the same counsel, same principal, same everybody involved throughout the EEOC process, and they received the right to sue letters. We believe that that issue with the employer is, although maybe tangential, is brought up, and I feel a need to rebut it here. Do you have a case where relation back would apply without a pleading? No. No. That means one thing to say, I filed a complaint before the limitations period ran. I'm going to add a defendant outside of the limitations period that relates back to a placeholder I have. But obviously a Rule 20 motion is not a pleading. No, it's not a pleading, but I think what we just heard counsel say is they recognize that we did sue when we filed that. So they certainly took it as a pleading. I think what I understood Judge Elrod to be asking, Judge Elrod can clarify it, I suppose, but I understood that we're spotting for the sake of discussion and we're moving on to a different part of the prong. We've been jumping around between different rules and different prongs of the thing. But I'm not sure it matters one way or the other if these are obviously jurisdictional requisites, right? Yes. To answer your question, there isn't a case that addresses it the way Your Honor phrased the question, that I'm aware of. I'm sorry, I misunderstood. There isn't a case that I'm aware of to bring before the court today. Two other things in rebuttal. Number one, counsel states that the witnesses would be different in the retaliation case and the underlying discrimination case. We're talking about a restaurant. We're talking about perhaps a single decision maker who makes the hiring and firing decisions. True, Waldron is already hired, but the person who fired him would likely be the same person who refused to hire these individuals that Waldron was complaining of. So I don't see where you get to the difference in the additional and the diversity of the witnesses. I just don't see that being an argument. The last thing I want to just bring to the Court's attention, and it's found on page 11 on our brief. I know you have it. I know you've seen it. But it's ROA 423 where the EEOC mentions that it is this alleged pattern of practice, which is what we're speaking of, that is the nucleus of operative facts that binds Waldron's claims and the claims of the individuals the EEOC represented in the underlying action. To me, that ties the package together, ties the litigation package together, if you will. And that's where we rest, unless there are other questions from the Court. Thank you, Counsel. We have your argument. Thank you, Your Honor. Your Honors. This completes our oral argument calendar for today. The Fifth Circuit will conduct additional oral arguments tomorrow morning at 9 a.m. Thank you.